IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**TROY CROCKETT**

                **Plaintiff,**

**v.**                                          1:06-cv-2277-WSD

**SECURITAS SECURITY SERVICES USA, INC.**

                **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Troy Crockett's ("Crockett") Motion to Remand [10], Crockett's Motion for Hearing re: Motion to Remand [11], Defendant Securitas Security Services USA, Inc.'s ("Securitas") Motion to Dismiss [15], Crockett's Motion to Amend Complaint [18], and the parties' Joint Motion to Stay Discovery [25].

**Background**

This dispute revolves around Crockett's failure to make court-ordered child support payments. On October 14, 2005, the Superior Court of DeKalb County, Georgia, issued a Final Consent Order and Stipulation Regarding Paternity Testing and Payment of Child Support ("Child Support Order"). Pursuant to that Order,

Crockett agreed to submit to a paternity test, and to pay child support if the test indicated that he was the father of the child in question. The test indicated Crockett as the father. The Child Support Order provided that Crockett's wages could be garnished to fulfill his duties of child support "[w]henever, in violation of the terms of this Order, there is a failure to make the support payments due hereunder so that the amount unpaid is equal to or greater than the amount payable for one month. . . ."

Crockett alleges that on October 15, 2005, he asked his employer Securitas to deduct the child support payment amounts from his paycheck and submit them on his behalf. Crockett alleges that Securitas agreed to this payment process on November 1, 2005. Later in November, when the first child support payment was due, neither Crockett nor Securitas forwarded any support payments.

On December 12, 2005, as permitted by the garnishment provision of the Child Support Order, the Office of Child Support Enforcement sent Securitas an Order/Notice to Withhold Income for Child Support. Securitas immediately garnished Crockett's wages, beginning in the pay period ending on December 15, 2006.

On January 26, 2006, Crockett was arrested for failing to make the November 2005 child support payment.  Securitas placed Crockett on unpaid leave the day of his arrest, following a company policy regarding employees with pending criminal charges.  Crockett alleges that Securitas singled him out for retaliatory treatment, applying the policy with unusual rigidness in his case.

Crockett was cleared of criminal charges on March 16, 2006, but Securitas did not reinstate him until August 8, 2006.  When Crockett returned to work, Securitas paid him a lower salary.

While unemployed after his arrest, Crockett attempted unsuccessfully to obtain unemployment benefits.  He claims that Securitas told the Department of Labor that he was employed, and that this representation convinced the Department not to grant him unemployment benefits.

On August 14, 2006, Crockett filed a *pro se* complaint in this case.  Crockett now appears to concede this complaint did not allege specific legal claims for relief, but merely described the conduct about which he complains, and the damages he alleges to have suffered.  Crockett generally claims that Securitas failed to garnish and submit child support amounts from his paycheck, resulting in

his arrest. Crockett also claims that his unpaid suspension and reinstatement at a lower salary were wrongful and caused him damage.

On December 14, 2006, after obtaining counsel, Crockett filed a proposed amended complaint, which adds the factual allegation that Crockett was permitted to work again, but at a lower salary. The proposed amended complaint also adds claims for relief under theories of intentional infliction of emotional distress and retaliation.

**Motion to Remand**

Crockett moves to remand this case on the ground that the Court lacks subject-matter jurisdiction. Crockett alleges that the parties are not diverse, because both he and Securitas are Georgia citizens. Crockett bases his allegations on the fact that several Securitas offices, including one belonging to a corporate vice president, are located in Georgia.

Securitas, as a removing defendant claiming diversity jurisdiction, must establish that it is a foreign corporation with a principal place of business in a state other than Georgia. See Sweet Pea Marine, Ltd. v. M/V Sweet Pea, 411 F.3d 1242, 1248 n.2 (11th Cir. 2005). It is undisputed that Securitas is incorporated in

Delaware, that Crockett is a Georgia citizen, and that the amount in controversy exceeds $75,000.

The Eleventh Circuit uses the "total activities" test to determine a corporation's principal place of business. <u>Macginnitie v. Hobbs Group, LLC</u>, 420 F.3d 1234, 1239 (11th Cir. 2005). The total activities test combines the "place of activities" test–which asks the location of the majority of the corporation's sales or production activities–and the "nerve center" test–which asks the physical location of the company's decision-making center, most often the company's headquarters. <u>Id.</u> The total activities test "requires a somewhat subjective analysis to choose between the results of the nerve center and place of activities tests, if they differ." <u>Id.</u> If a corporation's activities are dispersed across several states, the Court is entitled to give the nerve center test greater significance. <u>Id.</u>

Crockett alleges that "Defendant has well establish [sic] itself throught out [sic] the <u>Metro Atlanta AREA</u> with <u>offices</u> all OVER the <u>Metro Atlanta AREA</u>. Including hundred's [sic] and thousand's [sic] of <u>CONTRACTS</u> or <u>ACCOUNTS</u> ALL OVER the METRO ATLANTA AREA. . . ."

Securitas does not dispute that it has significant contacts with Georgia. Securitas alleges its principal place of business is in California. Securitas alleges

that its sales activities are widely dispersed across many states.  Securitas further alleges only 1.3% of its sales activities occur in Georgia, while more than 13% occur in California.  Securitas also alleges its corporate headquarters are in California.  These allegations are undisputed.

Securitas's undisputed allegations are sufficient to establish that Georgia is not its principal place of business.  The location of Securitas's nerve center, which is of particular significance because its business activities appear geographically dispersed, is in California.  Only a small portion of its business activity occurs in Georgia.  A significantly greater amount of business activity occurs in California.  Applying the total activities test, Securitas is not a Georgia citizen for jurisdictional purposes.  Complete diversity thus exists, and this Court has diversity jurisdiction over this matter.[1]

**<u>Motion to Amend Complaint</u>**

On August 14, 2006, Crockett filed a complaint *pro se* in the State

---

[1] Crockett has filed a Motion for Hearing [11] on his Motion to Remand. Local Rule 7.1E provides that motions are decided without oral hearings unless ordered by the Court.  The Court does not need further presentations from the parties and the motion is DENIED.

Court of DeKalb County, Georgia.[2]  Securitas filed a notice of removal to this Court on September 21, 2006.  Crockett prosecuted this action diligently as a *pro se* litigant, and timely filed a motion to remand on October 23, 2006.  On November 21, 2006, Securitas moved to dismiss this complaint.  Crockett then obtained counsel, who entered an appearance in this matter on November 27, 2006.  On December 14, 2006, Crockett, through his counsel, filed a Motion to Amend the original *pro se* complaint.  Securitas opposed the motion, reasserting its Motion to Dismiss against the proposed amended complaint and arguing that the motion to amend is futile.

Federal Rule of Civil Procedure 15(a) provides:

> A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Crockett filed his Motion to Amend well after Securitas filed responsive pleadings, thus leave of the Court is required to amend.  Generally, "[i]f the

---

[2]  The complaint is handwritten and less than a page in length.

underlying facts or circumstances relied upon by a plaintiff may be a proper subject to relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962).  A court should not deny a motion for leave to amend unless it has a "substantial reason" to do so, such as "undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party . . . [or] futility of the amendment."  Id.; see also Amick v. BM & KM, Inc., 275 F.Supp. 2d 1378, 1381 (N.D. Ga. 2003).

This Court is aware that the initial complaint was filed *pro se*, and that the proposed amended complaint was the first filing submitted by Crockett's counsel.[3] The relief requested by the proposed amended complaint is clear.  Considering the proposed amended complaint as a whole, the Court concludes that it adequately

---

[3] Securitas argues that the Court should not allow the amendment because it would be futile.  Securitas argues that the proposed amended complaint fails to state a viable claim.  Securitas's Motion to Dismiss, as urged to be applied to the proposed amended complaint, must be considered as a motion for summary judgment.  The proposed amended complaint states at least a facially sufficient claim for intentional infliction of emotional distress.  Thus, even if Crockett's claims fail on summary judgment, they are not "futile" in the sense that they fail to state a cognizable claim.

alleges a claim for intentional infliction of emotional distress.  The Motion to Amend is granted.

### Motion to Dismiss

The Court will now consider Securitas's Motion to Dismiss as applied to the amended complaint.  The Court must consider documents outside of the Complaint to reach a decision in this motion, specifically the Child Support Order.  In doing so, the Court is required to convert the motion to dismiss to a motion for summary judgment.  Fed. R. Civ. P. 12(b).  See also Day v. Taylor, 400 F.3d 1272, 1275-76 (11th Cir. 2005). The parties agree that the motion should be treated as a motion for summary judgment on the claims in Crockett's amended complaint, and they have briefed this issue under the summary judgment standard.

To prevail on summary judgment, Securitas must show that "no genuine issue of material fact" exists and that it is "entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c).  See also Evans v. McClain of Georgia, Inc., 131 F.3d 957, 961 (11th Cir. 1997).  The Court views all facts in the light most favorable to the nonmoving party, but only if there is a genuine dispute as to those facts.  Scott v. Harris, 127 S.Ct 1769, 1776 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine

issue for trial." Id. (quotation and citation omitted). In other words, the Court must ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 259 (1986).

*Intentional Infliction of Emotional Distress*

Crockett's amended complaint first claims that Securitas caused intentional infliction of emotional distress by "failing to submit [a] timely payment of child support," "failing to reinstate [Crockett] in a timely manner as to his original position and with the same compensation," and "opposing [Crockett's] claim for unemployment benefits."

Georgia law sets an exceedingly high bar for claims of intentional infliction of emotional distress. A plaintiff must demonstrate "(1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." Kramer v. Kroger Co., Inc., 534 S.E.2d 446, 451 (Ga. Ct. App. 2000).

Whether the conduct alleged is sufficiently extreme and outrageous is a question of law. Id. "[A] plaintiff must show that 'defendant's actions were so terrifying or insulting as naturally to humiliate, embarrass or frighten the

plaintiff.'" Bridges v. Winn-Dixie Atlanta, Inc., 335 S.E.2d 445, 447 (Ga. Ct. App. 1985). "Liability for intentional emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Lockhart v. Marine Mfg. Corp., 635 S.E.2d 405, 407 (Ga. Ct. App. 2006).

Securitas's actions, as alleged by Crockett, do not constitute intentional infliction of emotional distress.[4] Even if Securitas agreed to make the November child support payment, its failure to do so is not outrageous as a matter of law. See, e.g., Swyters v. Motorola Employees Credit Union, 535 S.E.2d 508, 510 (Ga. Ct. App. 2000) (stating that "an insurers' failure to pay benefits does not, as a matter of law, rise to the level of outrageous behavior required in a cause of action for intentional infliction of emotional distress"); United Parcel Serv. v. Moore, 519 S.E.2d 15, 17 (Ga. Ct. App. 1999) ("Sharp or sloppy business practices, even if in breach of contract, are not generally considered as going beyond all reasonable bounds of decency. . . .").

---

[4] Crockett has failed to show that his emotional distress was severe. This factor alone defeats the count as a matter of law.

Securitas's refusal to reinstate Crockett at the salary he received prior to his suspension also is not outrageous as a matter of law. Securitas is a security company. Their policy and decision to place Crockett on leave while criminal proceedings were pending against him is a reasonable business decision, not outrageous behavior. See Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) ("[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions.") (citations omitted). Even if Securitas applied its mandatory leave policy inconsistently or prejudicially to Crockett, its behavior still is not outrageous as a matter of law. See, e.g., Sossenko v. Michelin Tire Corp., 324 S.E.2d 593, 594 (Ga. Ct. App. 1984) (holding that a plaintiff singled out and forced by threats of dismissal to accept several demotions, coupled with other workplace harassment, did not suffer intentional infliction of emotional distress as a matter of law).

Crockett also complains that Securitas waited too long to reinstate him after charges against him were dismissed. This behavior also does not constitute intentional infliction of emotional distress. See Kramer, 534 S.E.2d at 451 (holding that employer's behavior was not outrageous when the employer conditioned a suspended employees's return to work on accepting a demotion and

executing a release of all claims after discovering that the employee had not committed the criminal conduct for which she had been suspended).

Finally, Crockett complains that Securitas adversely affected his efforts to secure unemployment benefits. Without the presence of some unusual additional circumstance (such as threats of violence), this behavior does not, as a matter of law, support an intentional infliction of emotional distress claim. ComSouth Teleservs., Inc. v. Liggett, 531 S.E.2d 190 (Ga. Ct. App. 2000) (holding that no claim for intentional emotional distress could be maintained where an employer was alleged to have terminated employee and then misrepresented her termination date to the Department of Labor to prevent the employee from receiving unemployment benefits).

### *Retaliation*

Crockett next claims that Securitas's decision to reinstate him at a reduced salary after considerable delay, and to oppose his efforts to collect unemployment benefits, constitute retaliation. Crockett does not present any authority for the proposition that "retaliation" is an independent cause of action under Georgia law. To the extent that Crockett's "retaliation" claim is ancillary to his intentional infliction of emotional distress claim, see, e.g., Yarbray v. Southern Bell Tel. &

Tel. Co., 409 S.E.2d 835 (Ga. 1991) (construing claim for retaliation as ancillary to claim for intentional infliction of emotion distress claim), it fails as a matter of law.

Under Georgia law, at-will employees "may be terminated for any or no reason. . . ." Reid v. City of Albany, 622 S.E.2d 875, 877 (Ga. Ct. App. 2005). An at-will employee in Georgia cannot generally recover for wrongful discharge. O.C.G.A. § 34-7-1. This bar against suit "is a fundamental statutory rule governing employer-employee relations in Georgia." Reilly v. Alcan Alum. Corp., 528 S.E.2d 238, 240 (Ga. 2000). Judicial exceptions to this rule are rare and disfavored. Robins Fed. Credit Union v. Brand, 507 S.E.2d 185, 187 (Ga. Ct. App. 1998). The rule also bars actions based on lesser adverse employment actions alleged to be retaliatory. See Reid, 622 S.E.2d at 878 (holding that an at-will former employee could not sue former employer for retaliation for making false statements to reduce employees' unemployment benefits). The undisputed facts show that Crockett is an at-will employee. Crockett's claim for retaliation thus fails as a matter of law.[5]

---

[5] Even if Georgia law provided a stand-alone cause of action for retaliation, the undisputed facts show that Securitas did not retaliate against Crockett for protected behavior or on the basis of a constitutionally protected classification. To be actionable, the behavior alleged to be retaliatory must generally retaliate against legally protected behavior or status. See, e.g., Liebno v. Drexel Chemical Co., 586 S.E.2d 67 (Ga. Ct. App. 2003) (discussing the requirements of retaliation claims

**Motion to Stay Discovery**

The parties move jointly for an extension of the Court's February 25, 2007, discovery deadline.  Because the Court enters judgment as a matter of law on Securitas's Motion to Dismiss, further discovery is not needed and this request is mooted.

Accordingly,

**IT IS HEREBY ORDERED** that Crockett's Motion to Remand [10] is **DENIED**.  Crockett's Motion for Hearing re: Remand [11] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the parties' Joint Motion to Stay Discovery [25] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Amend Complaint [18] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss [15], decided as a motion for summary judgment, is **GRANTED**.

---

under Title VII).  Any other rule would expose employers to the risk of suit any time they "retaliated" against an employee for unprotected behavior such as tardiness or poor job performance.

**SO ORDERED** this 25th day of May, 2007.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE